# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| **JENNY BAST**, on behalf of herself and all others similarly situated, | : : : | |
| | : | Case No: 2:25-cv-00104 |
| Plaintiff, | : : | Hon. _____ |
| v. | : : : | |
| **PEARL INTERACTIVE NETWORK, INC.**, an Ohio corporation, | : : : | **COMPLAINT AND JURY DEMAND** |
| Defendant. | : | |

## COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Jenny Bast ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Collective and Class Action Complaint against Pearl Interactive Network, Inc. (hereinafter referred to as "Defendant") and states as follows:

## INTRODUCTION

1.      This is an action seeking Court Authorized Notice pursuant to 29 U.S.C. § 216(b) and a Class Action pursuant to Fed. R. Civ. P. 23 brought by Plaintiff Jenny Bast individually and on behalf of all similarly situated persons employed by Defendant Pearl Interactive Network, Inc. arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Kentucky Wages and Hours Act and Kentucky Revised Statutes, KRS §§ 337.010, *et. seq.* ("Kentucky Wage Act"), and common law.

2.      Plaintiff and the putative collective members consist of current and former call center agents or similar positions ("Agents"), who were compensated on an hourly basis.

Throughout the relevant period, Defendant maintained a corporate policy and practice of failing to compensate its Agents for all pre- and mid-shift off-the-clock work.

3.    Regardless of the specific job title, all Agents: (1) are paid on an hourly basis; (2) are classified as non-exempt employees; (3) use the same timekeeping system(s); (4) use many (if not all) of the same computer programs; (5) are subject to the same relevant timekeeping and attendance policies; and (6) have the primary job duty of providing assistance to Defendant's customers.

4.    In particular, Defendant required its Agents to begin work prior to their scheduled shifts and perform a number of off-the-clock tasks that were integral and indispensable to their jobs, including booting up computers, logging into numerous software programs, and logging into phones. The Agents only "clocked in" and received compensation *after* this preliminary work was completed, though they were required to perform this work in order to be "phone ready" when their scheduled shifts began.

5.    An Agent's failure to be "phone ready" when the scheduled shift began (or when the shift resumed after meal periods), could result in poor schedule adherence scores, poor performance evaluations, warnings, discipline, and possibly termination.

6.    Additionally, Defendant required its Agents to perform similar unpaid tasks during their lunchbreaks, ensuring that they were "phone ready" at the moment their unpaid lunchbreaks ended, and additionally, after their scheduled shifts, logging out of the aforementioned programs and shutting down their computers.

7.    The Agents routinely worked forty (40) hours or more per week before accounting for their off-the-clock work. When the off-the-clock work is included, the Agents, even those Agents who were scheduled and paid for only forty (40) hours per week, actually worked over

forty (40) hours per week without the required overtime premium for hours worked over forty (40) per week.

8.      Defendant, through its managers, had actual and constructive knowledge that its Agents were completing this off-the-clock work without compensation. Nevertheless, Defendant suffered or permitted, and in fact trained and required, its Agents to complete this unpaid work.

9.      The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's Agents, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. One of those abuses, which is occurring in this case, is Defendant's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *See* **Exhibit A**, DOL Fact Sheet #64: Call Centers under the Fair Labor Standards, available at: *https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers.*

10.     The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." See *Id.*, at p. 2.  Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

11.     Defendant's practice of failing to compensate its Agents for all hours worked violated the Agents' rights under the FLSA.

12.     Plaintiff brings this action for violation of the FLSA as a collective action, pursuant to Section 216(b) of the FLSA, on behalf of the following Collective:

> *All current and former hourly call center agents who worked for Defendant at any time during the past three years.*

13.     Defendant is liable for its failure to pay it Agents for all work performed, and at the appropriate overtime rate for hours worked in excess of forty (40) per week.

14.     At the earliest time possible, Plaintiff will request that Court-authorized notice of this action be sent, pursuant to 29 U.S.C. § 216(b), to all similarly situated employees who worked for Defendant at any time in the past three years.

15.     Agents who elect to participate in this FLSA action by filing Consent to Join forms with this Court will seek compensation for all off-the-clock, pre- and mid-shift work performed for Defendant, an equal amount for liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

16.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claims, pursuant to 28 U.S.C. § 1331, because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

17.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

18.     Defendant's annual sales exceed $500,000, and Defendant employs more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Defendant's Agents engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

19.     This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367 because they originate from the same facts that form the basis of their federal claims.

20.     This Court has personal jurisdiction over Defendant because Defendant conducts business within the state of Ohio, employs individuals within the state of Ohio, is registered with the Ohio Secretary of State, and maintains its principal place of business in the state of Ohio.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant employs Agents in this District, conducts business in this District, and a substantial portion of the events that give rise to the Plaintiffs' claims occurred in this District.

## PARTIES

22.     Plaintiff Jenny Bast is a resident of Richmond, Kentucky and worked at Defendant's brick-and-mortar facility located in Winchester, Kentucky, as an hourly, non-exempt Agent from approximately November 2022 through November 2023. Defendant compensated Plaintiff through the payment of an hourly rate, most recently $16.20 per hour. Plaintiff signed a consent to join this FLSA action, which is attached hereto as **Exhibit B**.

23.     During the past three years, additional Opt-in Plaintiffs were or are employed as Agents and their consent forms have been or will also be filed in this case.

24.     According to Defendant's website, Defendant provides "multi-channel contact center solutions specializing in consultative, compassionate, and often complex interactions supporting beneficiaries, employees, and people requiring healthcare, government, and commercial services."[1]

25.     Defendant Pearl Interactive Network, Inc. is an Ohio corporation (Entity No. 1629820), and maintains its principal place of business in Columbus, Ohio. Defendant's registered agent for service of process is listed as D. Wesley Newhouse, 3366 Riverside Drive, Columbus, Ohio 43221.

---

[1] *See* https://pinsourcing.com/about-us/ (last visited January 25, 2025).

## GENERAL ALLEGATIONS

26.     Throughout their employment with Defendant, Plaintiff and other Agents were pressured to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

27.     Defendant employs hundreds of Agents who work at Defendant's physical call centers across the United States, as well as remotely from their homes, providing customer, sales, and other support to Defendant's customers throughout the United States.[2]

28.     Defendant has employed hundreds of Agents over the past three years as part of its call centers and remote work environment to handle consumer and customer phone calls concerning various issues.

29.     Defendant compensated its Agents on an hourly basis and classified them as non-exempt employees under the FLSA.

30.     Upon information and belief, Defendant maintains documents that demonstrate the promised hourly wage for each Agent, including but not limited to: offer letters, paystubs, and/or other payroll records.

31.     Defendant's Agent position typically had schedules that require employees to work at least eight (8) hours per day (with a thirty (30) minute unpaid meal period), on average five (5) days each week, and up to forty (40) hours or more in a workweek. However, in some workweeks, Defendant's Agents work less than forty (40) hours in a week and in other weeks they work more than forty (40) hours. If Defendant's Agents strictly adhere to Defendant's baseline forty (40) hour schedule, the Agent schedule results in Agents working overtime on a weekly basis.

32.     Throughout their employment with Defendant, Plaintiff and the other Agents' job

---

[2] *See* https://pinsourcing.com/jobs/#careers (last visited January 25, 2025).

duties included fielding inbound calls and performing a wide range of support services to those callers with questions.

33. Once hired, Defendant provides all Agents with training on, *inter alia*, how to carry out their day-to-day job duties, including how to load and log into their computer programs at the beginning of the day, and how to log out at the end of the day; how to track their time; the importance of attendance and schedule expectations; and Defendant's policies related to each topic. The training Defendant's Agents receive is substantially, if not entirely, the same and all Agents are subject to the same disciplinary policies.

34. Plaintiff and other similarly situated Agents are instructed to be "phone ready" the moment their scheduled shift starts. This requires Defendant's Agents to be logged in and have loaded all of their essential work-related computer programs and applications at the start of their shift so they can be prepared to take calls the moment their shift begins. An Agent's failure to be "phone ready" could result in poor performance evaluations, warnings, discipline, and possibly termination. Thus, Defendant forces its Agents to perform the boot-up and login process before clocking into Defendant's timekeeping system.

35. All of Defendant's Agents use the same or similar computer networks, or software, programs, and applications in the course of performing their job responsibilities. These programs and applications are an integral and important part of the Agents' work and they cannot perform their jobs without them.

36. Once training is completed and in order to perform their job duties, Plaintiff and all other Agents are required to boot up and log into various computer networks, software programs and applications, in order to access information necessary to perform their job functions. However, Plaintiff and all other Agents are instructed to not actually "clock in" for their shifts until after the

computer boot-up and login process is complete or nearly complete.

37. Defendant has similar policies which prevented Plaintiff and all other Agents from "clocking in" or "out" during their lunch break, or after their scheduled shifts are completed.

38. Plaintiff and all other similarly situated Agents are also trained or instructed to "clock out" before closing all work applications and systems to make certain they are "clocked out" the moment they are done fielding calls.

39. The pre- and mid-shift off-the-clock time Plaintiff and all other Agents spend booting up, logging in, and logging off of their computers directly benefits Defendant and is integral and indispensable to the Agents' job responsibilities.

40. Despite knowing Plaintiff and all other Agents perform this pre- and mid-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

41. Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other Agents boot up and log into their computers each day, along with the time they log into their telephone systems.

42. Because Defendant requires its Agents to perform pre- and mid-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time Agents spend working for Defendant. Thus, the hours reflected on the Agents' paystubs are also inaccurate representations of the hours they worked.

43. Despite its ability to track the amount of time Plaintiff and other Agents spend in connection with the pre- and mid-shift boot-up, login, and log-out processes, Defendant failed to pay Plaintiff and other Agents for the off-the-clock work they performed each shift, thus breaching its contracts with its Agents.

44.     Plaintiff and similarly situated Agents regularly worked overtime and non-overtime hours for which they were not paid.

45.     During the weeks that Agents do not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices is a deprivation of straight-time wages, in breach of Defendant's contracts with its Agents.

### A. Pre-Shift Off-the-Clock Work

46.     Like most call centers, Defendant maintained detailed attendance and schedule adherence policies and used them to evaluate its Agents' job performance.

49.     Defendant uses its attendance/schedule adherence policies to pressure its Agents into arriving early and working off-the-clock so they can be "phone ready" at the start of their shifts.

50.     Throughout their employment with Defendant, Plaintiff and other Agents were pressured to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

51.     Whether working remotely or in person, upon arriving to their computer, Defendant's Agents were trained and required to follow a specific protocol to start up and log into the company's computer network and numerous software programs in order to access the necessary information to perform their work.

52.     The pre-shift boot-up and login process generally consisted of the following steps:

a.     The Agents turned on or woke up their computer;

b.     The Agents next logged into their VPN application;

c.     The Agents would then log in to Defendant's website portal to access company information;

      d.     The Agents next logged in to the Microsoft Teams application;

      e.     Next, Agents opened Outlook, checked and responded to company emails, and ensured all of their systems were operational;

      f.     Agents next opened several other project-specific applications;

      g.     Agents would then "punch in" to their Avaya phone system and start receiving customer calls.

53.     The boot-up and login process described above took substantial time on a daily basis, ranging from five (5) to ten (10) minutes per shift, or more, depending on how fast/slow the computers and programs were operating.

54.     Agents were required to complete each of these tasks prior to "punching in," as Agents could not be "phone ready" until these tasks were complete.

55.     Defendant's Agents did not actually "clock in" for their shifts until the start of their scheduled shifts; meaning that Plaintiff and all other Agents worked off-the-clock for at least five (5) to ten (10) minutes (or more) before each shift for which they were never compensated.

56.     If Agents arrived immediately prior to their scheduled shifts, they were in danger of clocking in late if they could not complete the required pre-shift work necessary to be "phone ready" when their scheduled shifts began, and they would therefore receive a tardy on their records and poor schedule adherence scores.

57.     Because Defendant's Agents typically worked scheduled shifts of at least forty (40) hours per week, their required pre-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

58. Defendant had express and constructive knowledge that its Agents began the pre-shift boot-up and login process while off-the-clock in order to make sure they were "phone ready" and "clocked in" on time.

59. Defendant's policies and practices discouraged its Agents from recording all time worked.

60. Despite having express and constructive knowledge of its Agents' pre-shift off-the-clock work, Defendant failed to exercise reasonable diligence to determine the amount of unpaid overtime owed to its Agents.

61. Defendant's Agents are not compensated for all of this time because Defendant prohibits Agents from clocking into its timekeeping software before the start of their scheduled shift.

62. The pre-shift off-the-clock work performed by Agents directly benefitted Defendant, and was integral and indispensable to their job duties and responsibilities as Agents.

## B. **Meal-Period Off-the Clock Work**

47. Defendant promised its Agents one unpaid 30-minute meal period each eight (8) hour shift.

48. However, Defendant also required its Agents to perform off-the-clock work during these unpaid meal periods, including returning from the thirty (30) minute meal period approximately three (3) to five (5) minutes early in order to have enough time to log back in to Defendant's programs and software prior to resuming their shifts. This process was similar to the pre-shift login process described above (albeit abbreviated), and this time went unpaid.

49. According to the U.S. Department of Labor, "[r]est periods of short duration, usually 20 minutes or less, are common in the industry (and promote employee efficiency), and

must be counted as hours worked. *Bona fide* meal periods (typically 30 minutes or more) generally need not be compensated as work time as long as the employee is relieved from duty for the purpose of eating a regular meal." (***Exhibit A***, Fact Sheet #64 at p. 2).

50.     Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *completely relieved* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

51.     Defendant did not provide Agents with legitimate bona fide meal periods because it required the Agents to return to their computer stations prior to the end of their unpaid meal periods to log back into their computer and place themselves in a "ready" state so they could resume fielding calls promptly at the end of their scheduled meal periods.

52.     If Agents were not logged back into the phone system and ready to take calls and electronic correspondence promptly at the conclusion of their scheduled meal breaks, they were considered "out of adherence" and could be subjected to disciplinary action.

53.     Agents spent approximately three (3) to five (5) minutes performing this work during their unpaid meal periods. Thus, Defendant maintained a common plan and policy pursuant to which it failed to pay Agents for no less than three (3) minutes per day of work performed during their meal periods.

54.     The off-the-clock work Plaintiff and other Agents performed during their meal

periods was compensable, directly benefited Defendant and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to the Agents' job duties and responsibilities.

55.     In workweeks where Defendant's Agents worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, Defendant violated the FLSA by failing to: (1) pay them the federally mandated overtime compensation for all work performed; and (2) record all of the time that its Agents, including Plaintiff, worked for Defendant's benefit.

56.     Defendant's management was aware that Plaintiff and other Agents performed this off-the-clock work, but permitted and even rewarded it through Defendant's metrics, compensation and timekeeping policies, and schedule adherence requirements.

57.     Plaintiff and other Agents were subject to Defendant's uniform Meal-Period Off-the-Clock policy and practice that violated the FLSA.

**C. Plaintiff's Exemplary Workweeks**

58.     The FLSA and regular wage violations discussed herein occurred throughout Plaintiff's employment with Defendant; however, as an example of one pay period where Defendant failed to pay Plaintiff overtime wages for hours worked in excess of forty (40) hours (as mandated by the FLSA), Plaintiff provides her paystub for the pay period of:

**Pay Period of January 2 – January 15, 2023**

- Plaintiff was paid at a rate of $16.18 per hour for her 72.3 regular hours per work week (2) during this pay period.

- With unpaid pre-shift time in the range of ten (10) to fifteen (15) minutes per shift at five shifts per week; and

- Unpaid mid-shift time in the range of three (3) to five (5) minutes per shift at five shifts per week; and

13

- Plaintiff should have been paid an additional sixty-five (65) to one hundred (100) minutes for each work week (2) during this pay period at her overtime rate of $24.27 for each hour worked in excess of 40 in the overtime workweek(s).

(*See* **Exhibit C**, Plaintiff Bast January 20, 2023 Earnings Statement).

### D. Defendant Benefitted from the Agents' Off-the-Clock Work

59.     At all relevant times, Defendant has required and directly benefited from the off-the-clock work performed by Plaintiff and all other Agents in connection with pre-shift and mid-shift activities described above.

60.     At all relevant times, Defendant has controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and all other Agents.

61.     At all relevant times, Defendant has been able to track the amount of time Plaintiff and all other Agents spend in connection with pre-shift and mid-shift activities; however, Defendant has failed to do so and has failed to compensate Plaintiff and all other Agents for the off-the-clock work they performed.

62.     At all relevant times Plaintiff and all other Agents have been non-exempt hourly employees, subject to the requirements of the FLSA.

63.     At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and the other Agents in order to pressure them into performing with pre-shift, and mid-shift work off-the-clock.

64.     Defendant expressly trained and instructed Plaintiff and all other Agents to perform these off-the-clock work activities when they were not "clocked in" to Defendant's timekeeping system.

65.     Defendant instructed Agents to have all work applications and systems fully loaded before the start of their shifts, which takes them in the range of ten (10) to fifteen (15) minutes per

day.

66.     Additionally, Plaintiff and all other Agents would have to return from their unpaid meal period early in order to have all work applications and systems fully loaded before resuming their shifts, which takes them in the range of three (3) to five (5) minutes per day.

67.     At all relevant times, Defendant's policies and practices deprived Plaintiff and the Agents of wages owed for off-the-clock pre-shift and mid-shift activities they performed. Because Defendant's Agents typically worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay.

68.     Defendant is in possession of the payroll and timekeeping records that will illustrate exactly which weeks Plaintiff worked over forty (40) hours and exactly which weeks they worked under forty (40) hours.

69.     Defendant has known or should have known that the time spent by Plaintiff and other Agents in connection with the off-the-clock pre-shift and mid-shift activities is compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that they have acted in good faith.

70.     Despite knowing Agents performed off-the-clock work before and during their shifts, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

71.     Unpaid wages related to the off-the-clock work described herein are owed to Plaintiff at the FLSA mandated overtime premium of one and one-half the Plaintiff's regular hourly rate because Plaintiff worked in excess of forty (40) hours in a workweek.

## SIMILARLY SITUATED ALLEGATIONS

72.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of herself and on behalf of:

> *All current and former similarly situated Agents who worked for Defendant at any time in the past three years.*

(hereinafter referred to as the "Putative Plaintiffs"). Plaintiff reserves the right to amend this definition if necessary.

73.     Excluded from the definition of the Putative Plaintiffs are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

74.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

75.     Consistent with Defendant's policies and practice, Plaintiff and the Putative Plaintiffs were not paid for all straight and/or premium overtime compensation in workweeks during which they worked forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

76.     All of the work Plaintiff and the Putative Plaintiffs performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiff and the Putative Plaintiffs performed.

77.     As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the Putative Plaintiffs. This policy and pattern or practice includes, but is not limited to:

a.    Willfully failing to pay its employees, including Plaintiff and Putative Plaintiffs, for all premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek;

b.    Willfully failing to pay its employees, including Plaintiff and Putative Plaintiffs, for other off-the-clock work, such as the pre-shift boot-up and mid-shift boot-up process; opening and closing all applications, networks and programs and turning and logging off on their computers; and

c.    Willfully failing to record all of the time that its employees, including Plaintiff and Putative Plaintiffs, have worked for the benefit of Defendant.

78.    Defendant's unlawful conduct was (and is) widespread, repeated, and consistent.

79.    An action for Court Supervised Notice under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

80.    The employment relationships between Defendant and every Putative Plaintiff are the same and differ only by name, location, and rate of pay. The key issues – the amount of uncompensated pre-shift and mid-shift off-the-clock work owed to each employee – do not vary substantially among the Putative Plaintiffs.

81.    Plaintiff estimates the Putative Plaintiffs, including both current and former Agents over the relevant period, includes hundreds of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

82.    Plaintiff and the Putative Plaintiffs were subject to Defendant's uniform Off-the-Clock policy and practices that violated the FLSA.

83.    Plaintiff and the Putative Plaintiffs' claims are based on the same legal theories, namely, Defendant's statutory violations, and proof of Defendant's violations, as well as

Defendant's unlawful conduct, will be common across all Putative Plaintiffs.

84.     Plaintiff asserts that at least a strong likelihood exists that they are similarly situated to the Putative Plaintiffs.

85.     The Putative Plaintiffs should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the Putative Plaintiffs, who were unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which Defendant unlawfully withheld from them.

## RULE 23 KENTUCKY CLASS ACTION ALLEGATIONS

86.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of the following putative Class (herein collectively referred to as the "Rule 23 Kentucky Class"):

> *All current and former hourly Agents who work or have worked for Defendant at any location in Kentucky during the applicable statutory period.*

Plaintiff reserves the right to amend this definition if necessary.

87.     The members of the Rule 23 Kentucky Class are so numerous that joinder of all members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Kentucky Class members. Rule 23 Kentucky Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

88.     There is a well-defined community of interests among Rule 23 Kentucky Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Kentucky Class. These common legal and factual questions, include, but are not limited to, the following:

> a.  Whether the pre-shift time Rule 23 Kentucky Class members spent on startup and login activities before "clocking in" for each shift is compensable;

b. Whether the time that Rule 23 Kentucky Class members spent on work activities during their lunch break, such as logging back into their computer and placing themselves in a "ready" state, is compensable;

c. Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 Kentucky Class member regular wages or minimum wage for each non-overtime hour worked;

d. Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 Kentucky Class member overtime compensation for each overtime hour worked; and

e. Whether Defendant should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating the Kentucky state law and wage acts applicable to the members of the Rule 23 Kentucky Class.

89. Plaintiff's claims are typical of those of the Rule 23 Kentucky Class in that it and all other Rule 23 Kentucky Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 Kentucky Class member claims and their legal theories are based on the same legal theories as all other Rule 23 Kentucky Class members.

90. Plaintiff will fully and adequately protect the interests of the Rule 23 Kentucky Class and Plaintiff's retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Kentucky Class.

91. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Kentucky Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

92. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel

know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

93.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

94.     Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Kentucky Class and declaratory relief is appropriate in this case with respect to the Rule 23 Kentucky Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

95.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former similarly situated Agents who worked for Defendant at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

96.     The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

97.     There is a well-defined community of interests among Rule 23 Nationwide Class

members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

    a. Whether the pre- and mid-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable time under applicable law;

    b. Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

    c. Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

98. Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

99. Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff's retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

100. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

101. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel

know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

102.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

103.     Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**FLSA COLLECTIVE ACTION**
**VIOLATIONS OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq.* -- FAILURE TO PAY OVERTIME AND MAINTAIN RECORDS**

104.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

105.     At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

106.     At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

107.     At all times relevant to this action, Plaintiff and the Putative Plaintiffs were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

108.     At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the Putative Plaintiffs to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

109.    Plaintiff and Putative Plaintiffs, by virtue of their job duties and activities actually performed, were all non-exempt employees.

110.    Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

111.    The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

112.    The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq.*

113.    At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and the Putative Plaintiffs to work off-the-clock, every shift, and failed to pay these employees their regular hourly rate for all hours worked in non-overtime workweeks and the federally mandated overtime compensation for all work performed.

114.    The off-the-clock work performed every shift by Plaintiff and the Putative Plaintiffs was an essential part of their jobs and these activities and the time associated with these activities was significant.

115.    In workweeks where Plaintiff and other Putative Plaintiffs worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, all of this overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including a shift differential where applicable. 29 U.S.C. § 207. Further, all "gap time" should have been paid

at Plaintiff's and the Putative Plaintiffs' regular hourly rate.

116.     As a result of Defendant's unlawful policies and practices, Plaintiff and the Putative Plaintiffs were deprived of both straight time and overtime wages in violation of the FLSA.

117.     At all times relevant to this action, Defendant failed to maintain true and accurate time records of all hours worked by Plaintiff and the Putative Plaintiffs.

118.     Defendant's violations of the FLSA were knowing and willful. Defendant could have easily accounted for and properly compensated Plaintiff and the Putative Plaintiffs for all work activities, but did not.

119.     Plaintiff and the Putative Plaintiffs are entitled to backpay as well as liquidated damages in an amount equal to their back pay. As a result of Defendant's FLSA violations, Plaintiff and the Putative Plaintiffs are owed overtime wages at a rate to be calculated by taking the difference between the overtime they should have received for each workweek and the overtime they did receive during the same time period calculated using the incorrect regular rate. The exact amount can be readily determined using payroll and other employment records Defendant is statutorily required to maintain under FLSA 29 U.S.C. § 211(c).

120.     As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against Defendant including unpaid wages (including unpaid overtime), an additional equal amount in liquidated damages (double damages), reasonable attorneys' fees and costs, interest, and all other relief just and appropriate under the circumstances.

### COUNT II
### RULE 23 KENTUCKY CLASS ACTION
### VIOLATIONS OF THE KENTUCKY WAGES AND HOURS ACT
### AND KENTUCKY REVISED STATUTES,
### KRS §§ 337.010, *et seq.* ("KENTUCKY WAGE ACT")

121.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

122. At all times relevant to the action, Defendant was an employer covered by the overtime and wage mandates of the Kentucky Wage Act and the Rule 23 Kentucky Class were employees entitled to the Kentucky Wage Act's protections.

123. The Kentucky Wage Act, KRS §§ 337.010, *et. seq.*, requires employers to pay their employees minimum wages (*see* KRS § 337.275) and time-and-a-half their regular rate of pay for hours worked in excess of forty (40) per week (*see* KRS § 337.285).

124. The Kentucky Wage Act also entitles employees to overtime compensation at a rate equal to one and one-half the amount of their regular rate of pay for any work performed on the seventh workday of any workweek. *See* KRS § 337.050(1).

125. KRS § 337.020 provides that "[e]very employer doing business in this state shall, as often as semimonthly, pay to each of its employees all wages or salary earned to a day not more than eighteen (18) days prior to the date of that payment."

126. Pursuant to KRS § 337.385, an employee who has not been paid in accordance with The Kentucky Wage Act may bring a civil action to recover "full amount of such wages and overtime compensation, less any amount actually paid to such employee by the employer, for an additional equal amount as liquidated damages, and for costs and such reasonable attorney's fees as may be allowed by the court."

127. The Kentucky Wage Act entitles employees to compensation for every hour worked in a workweek.

128. Defendant violated the Kentucky Wage Act by regularly and repeatedly failing to compensate the Rule 23 Kentucky Class for the time spent on the work activities described in this Complaint.

129. Defendant's uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

130. As a result, the Rule 23 Kentucky Class has and will continue to suffer loss of income and other damages. Accordingly, the Rule 23 Kentucky Class is entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the Kentucky Wage Act at an amount to be proven at trial.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**BREACH OF CONTRACT**

131. Plaintiff re-alleges and incorporates all previous paragraphs herein.

132. At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

133. Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for work performed by Plaintiff, Agents, and Putative Plaintiffs, which Plaintiff accepted and performed, but Defendant failed to perform by paying Plaintiff and the Rule 23 Nationwide Class the promised wages.

134. For example, Defendant offered to compensate Plaintiff $16.20 per hour, if she agreed to perform services for Defendant as an Agent. Plaintiff accepted Defendant's respective offers and performed her duties as an Agent in reliance on the offers.

135. Defendant breached its contractual promises by failing to pay Agents at their fixed, pre-agreed upon hourly rate for all of the hours worked.

136. Upon information and belief, each Rule 23 Nationwide Class member, including

Plaintiff, was contractually entitled to a minimum hourly rate of approximately $16.18 per hour within the applicable period.

137. Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre- and mid-shift work described herein.

138. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

139. Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

140. Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims for non-overtime hours/workweeks).

141. Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

142. As a direct and proximate result of Defendant's contractual breaches, Plaintiff and

the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

## COUNT IV
## RULE 23 NATIONWIDE CLASS ACTION
## UNJUST ENRICHMENT

143. Plaintiff re-alleges and incorporates all previous paragraphs herein.

144. This Count is pled in the alternative to Count III, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

145. At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

146. Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

147. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

148. Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

149. Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

150. Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity

owners.

151.     Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

152.     Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

153.     As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request the following relief:

a.     An Order authorizing Court Supervised Notice pursuant to the FLSA, 29 U.S.C. § 216(b), and an order directing Defendant to provide Plaintiff with a list of all current and former hourly customer service representatives who work or have worked for Defendant at any time in the past three years. This list shall include the last known addresses, emails, and telephone number of each such person, so that Plaintiff can give those individuals notice of this action and an opportunity to make an informed decision about whether to participate;

b.     In the event the Defendant seeks to have discovery on the issues of whether the Putative Plaintiffs are similarly situated to Plaintiff, an order tolling the FLSA statute of limitations for the Putative Plaintiffs as of the filing of this Complaint through the end of the *Clark* discovery period;

c.     An Order certifying this action as a class action (for the Rule 23 Kentucky Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's Kentucky state law claim (Count II);

d.     An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract claim (Count III);

e.     An Order certifying this action as a class action (for the Rule 23 Nationwide Class)

pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's unjust enrichment claim (Count IV);

f. An Order designating the Plaintiff as representative of the Putative Plaintiffs and undersigned counsel as Class counsel for the same;

g. An Order designating Plaintiff as representative of the Rule 23 Kentucky Class and undersigned counsel as Class counsel for the same;

h. An Order designating Plaintiff as representative of the Rule 23 Nationwide Class and undersigned counsel as Class counsel for the same;

i. An Order requiring a complete accounting of all the compensation Plaintiff and the Putative Plaintiffs are owed;

j. An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

k. An Order declaring Defendant's violations of the FLSA were willful;

l. An Order declaring Defendant violated Kentucky state law for failing to pay Plaintiff and the Rule 23 Kentucky Class the minimum wage and overtime compensation to which they were entitled;

m. An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

n. An Order declaring Defendant was unjustly enriched by the off-the-clock work it required Plaintiff and the members of the Rule 23 Nationwide Class to perform;

o. An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the Putative Plaintiffs, the Rule 23 Kentucky Class, and the Rule 23 Nationwide Class the full amount of damages and penalty damages available by law;

p. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

q. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

r. An Order awarding such other and further relief as this Court deems appropriate.

Dated: February 6, 2025                    Respectfully Submitted,

*/s/* Robert E. DeRose
Robert E. DeRose (OH Bar No. 0055214)
Anna R. Caplan (OH Bar No. 0104562)
BARKAN MEIZLISH DEROSE COX, LLP
4200 Regent Street, Suite 210
Columbus, OH 43219
Telephone: 614-221-4221
bderose@barkanmeizlish.com
acaplan@barkanmeizlish.com

Matthew L. Turner (*Pro Hac Vice forthcoming*)
Paulina R. Kennedy (*Pro Hac Vice forthcoming*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
mturner@sommerspc.com
pkennedy@sommerspc.com

*Attorneys for Plaintiff and the Putative*
*Collective/Class Members*

## JURY DEMAND

Plaintiff Jenny Bast, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: February 6, 2025                       Respectfully Submitted,

*/s/* Robert E. DeRose
*One of the Attorneys for Plaintiff and the Putative*
*Plaintiffs/Class Members*